CYRUS H. McCORMICK, Respondent, *v.* THE PENNSYLVANIA CENTRAL RAILROAD COMPANY, Appellant.

In an action for an alleged conversion of certain trunks and their contents, it appeared that plaintiff, with his family and baggage (nine trunks), went to defendant's depot to take passage to Chicago. The baggage-master demanded an additional sum for extra baggage, and refused to deliver checks unless it was paid. Plaintiff refused to pay and demanded his baggage, which the baggage-master refused to deliver for the alleged reason that it had been placed in the baggage-van in such a position as to make it inconvenient or impossible to re-deliver it in time for the train to depart on schedule time. Plaintiff's evidence, however, tended to show that the baggage was in plain sight and accessible in the van, and that there was sufficient time to remove it. Plaintiff refused to take passage and left the baggage in defendant's possession. The next day plaintiff called on defendant's president who promised that the baggage should be stopped at Pittsburg and delivered to plaintiff there, and gave the latter an order authorizing him to receive it without checks ; he, with his family, thereupon took passage on defendant's road for Chicago; on arriving at Pittsburg he applied to defendant's baggage-master for his baggage, but was informed that it had gone on to Chicago. The baggage-master gave him an order directing the agent at Chicago to deliver the baggage to him on demand. It arrived at Chicago that day, and was stored in defendant's depot, and the following night the depot with a greater portion of the baggage was destroyed by fire. Plaintiff stopped over one train and arrived at Chicago the next day. *Held*, that the facts authorized a finding of a conversion of the baggage at Philadelphia, and that there was not, subsequently, such a renewal of the relations of carrier and passenger, and such a resumption of possession and control thereof by defendant as constituted a waiver of any claim except for nominal damages for such conversion ; that assuming the original wrongful conversion a duty rested upon defendant, if it de-

sired to escape liability, to replace in the actual custody and possession of plaintiff the property wrongfully taken from him.

*McCormick* v. *P. C. R. R. Co.* (80 N. Y. 353), distinguished.

Plaintiff and his wife were married in Illinois in 1858. By a statute of that State, passed in 1862, it is enacted that the separate property of a married woman, and property acquired by her in good faith during coverture, from any person other than her husband, shall remain her sole and separate property. A portion of the property destroyed consisted of articles of clothing and ornaments of the wife, given to her by plaintiff prior to the passage of said act. *Held,* that plaintiff was entitled to recover therefor.

A party to an action is not estopped from contradicting the testimony of an adverse witness on a material point in issue, by the fact that upon two former trials of the action the same testimony was given and was not contradicted by him. The fact simply is to be taken into account by the jury in considering the weight and credibility of the evidence.

(Argued March 23, 1885 ; decided April 14, 1885.)

Appeal from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made June 1, 1883, which affirmed a judgment in favor of plaintiff, entered upon a verdict and affirming an order denying a motion for a new trial.

This action was brought for the alleged conversion of certain trunks and their contents, constituting the baggage of plaintiff and his family.

It is reported on former appeals in 49 N. Y. 303, and 80 id. 353.

The material facts are stated in the opinion.

*Charles M. Da Costa* for appellant. If there was a conversion by defendant it was waived by plaintiff. (*Comes* v. *Nichols,* 10 Gray, 359, 361.) The exceptions to the refusal of the court to charge the jury " that the plaintiff is not entitled to recover for the loss of the diamonds and jewelry belonging to his wife " and " that the plaintiff is not entitled to recover for the loss of wearing apparel belonging to his wife," and the exceptions to the admissions of the evidence involving the same propositions were well taken. (*Rose* v. *Sanderson,* 38 Ill. 247 ; *Farrell* v. *Patterson,* 42 id. 52 ; *Tomlinson* v. *Mathews* [1881],

98 id. 178 ; 49 N. Y. 303, 317 ; *Whiton* v. *Snyder*, 88 id. 299.)

*Roscoe Conkling* for respondent. If plaintiff expressed to defendant's agent at Pittsburg his gratification, that the baggage had been forwarded to Chicago, although that circumstance might have borne upon the question of fact, it constitutes no release or waiver of plaintiff's right of action. That could only be done by technical release or satisfaction. (*McKnight* v. *Dunlop*, 5 N. Y. 537 ; *Barber* v. *Rose*, 5 Hill, 77 ; *Bowman* v. *Teal*, 23 Wend. 309 ; *Willoughby* v. *Backhouse*, 4 Dowl. & Ryl. 539.) Plaintiff was entitled to recover for such of the property as had been presented by him to his wife. (49 N. Y. 316 ; 2 Bl'k Com. 435 ; *Harris* v. *R. R. Co.*, 61 N. Y. 656 ; *Curtis* v. *D. & L. R. R. Co.*, 74 id. 116 ; *Farrell* v. *Patterson*, 43 Ill. 52 ; *Rose* v. *Sanderson*, 38 id. 247 ; *Emerson* v. *Clayton* 32 id. 493.) If there was a conversion and no resumption of possession, or waiver of right, plaintiff was under no obligation to care for the goods. He could rely on the conversion and abandon the property, or accept what might be reclaimed, holding defendant for the residue. (*People* v. *Bk. of N. A.*, 75 N. Y. 547.)

Ruger, Ch. J. The verdict of the jury has determined all disputed questions of fact in the case in favor of the plaintiff, and prior adjudications upon former appeals to this court have also settled the principal questions of law involved in the controversy. (49 N. Y. 303 ; 80 id. 353.) It was held upon such appeals that the proof of circumstances, attending the delivery of his baggage, by the plaintiff to the defendant, on March 11, 1862, at Philadelphia, and the subsequent refusal of the defendant to redeliver it upon plaintiff's request, was evidence from which a jury were authorized to find its conversion by the defendant at that time. The facts upon which this proposition was based have, so far as the defendant's claim is concerned, remained substantially unchanged, through the subsequent trials of the case. As related by the plaintiff,

whose testimony has been approved by the verdict of the jury and is therefore conclusive upon an appellate tribunal, they were substantially as follows: On March 11, 1862, between 10 and 11 o'clock, P. M., and about twenty minutes before the schedule time for starting the train, the plaintiff with his family arrived at the depot of the defendant in Philadelphia, with his baggage consisting of nine pieces, for the purpose of taking passage for Chicago. While there, a controversy arose between the defendant's baggage-master and the plaintiff, with reference to the payment of an additional charge for extra baggage. The plaintiff refused to pay it, and the baggage-master refused to deliver checks for the baggage, until it was paid. The plaintiff several times demanded either the return of his baggage or the delivery of checks therefor, and the baggage-master as often — refused to deliver the checks until the additional charge was paid, or to return the baggage. The baggage-master testified that he alleged as a reason for not returning the baggage that the train was about to start, and it had been placed in the van in such a position as to make it inconvenient or impossible to reach it and redeliver it in season for the train to depart upon its schedule time; on the other hand, the plaintiff's evidence tended to show that the baggage was in plain sight and accessible in the van, and that there was sufficient time to remove and deliver it to the plaintiff before the time for the starting of the train would expire. Under these circumstances, the plaintiff refused to take passage on the train, and leaving his baggage in the possession of the defendant returned to the hotel, where he remained with his family until the next day. The baggage-master claimed that he first refused to deliver the checks, on the ground that the plaintiff had not then procured his tickets, but the plaintiff testifies that to the best of his recollection he had his tickets when he first applied for checks, and under the rule referred to we must assume that his version of the transaction has been adopted by the jury as correct. The morning after these occurrences the plaintiff called on Mr. Thompson, the president of the defendant, and

explained the transactions of the previous evening to him. The conversation resulted in the plaintiffs obtaining an order authorizing him to receive his baggage at Pittsburg from the defendant's agent there, without the necessity of producing checks therefor, and a promise on the part of the defendant that it would cause the baggage to be stopped at Pittsburg and delivered to him upon demand. The plaintiff with his family thereafter took passage on the defendant's train for Chicago, and started upon their journey the evening of March 12. On arriving at Pittsburg the following day, he applied to the defendant's baggage-agent for his baggage, but was informed that by some inadvertence it had not been taken off on its arrival there, but had gone on to Chicago. The baggage-master then indorsed an order upon a copy of that addressed to him, directing the baggage-agent at Chicago to deliver the baggage in question to the plaintiff on demand at that place without checks. The plaintiff's family continued their passage to Chicago on the same train, but he himself laid over for one train at some place on the route, and did not arrive at his destination until the 14th, after the destruction of his baggage. In the night following the 13th, the defendant's depot at Chicago was struck by lightning and set on fire, and was consumed with its contents. Some small portion of the plaintiff's baggage, which had been stored in the depot by the defendant was preserved, and afterward returned to and accepted by him.

When the case was before this court as reported in the 80th N. Y., the facts were in some material respects different from those now appearing, and it was held upon the case then presented that the subsequent negotiations and agreements taking place between the plaintiff and defendant as to a redelivery of the baggage at Pittsburg, and when those arrangements failed, its continued transportation to Chicago, the original place of its destination, sanctioned and approved by the plaintiff, constituted a resumption of the control of the baggage by him, and a renewal of the relations of passenger and carrier previously existing between the parties which relieved the de-

**70** McCormick *v.* Pennsylvania Cent. R. R. Co. [April,

Opinion of the Court, per Ruger, Ch. J.

fendant from any liability for its original conversion, except for nominal damages.

Upon the last trial the case was conducted by the plaintiff upon the theory of such a change in the proof as to the circumstances following the original conversion as precluded any assumption that he had recovered possession or control of his baggage, or had resumed, with the defendant, the relations existing between a passenger with his baggage and a carrier at any time after the alleged conversion by the defendant. Evidence was given by the plaintiff controverting the principal circumstances upon which the ruling of this court in the 80th of N. Y., in respect to the waiver of the cause of action, was based, and tending to show that he never exercised any control over his baggage, or resumed his relations as a passenger with the defendant, at any time after the original conversion. At the conclusion of the plaintiff's evidence no motion to nonsuit was made, or question raised by the defendant, as to the plaintiff's right to recover upon the case as then made. The defendant, however, thereafter gave evidence tending to show that at plaintiff's request it gave orders to have the baggage taken off the cars at Pittsburg when the train arrived there, and for its delivery to the plaintiff, and that he consented to accept it there, and received an order from defendant's general baggage agent at Philadelphia upon its baggage agent at Pittsburg directing him to deliver such baggage to the plaintiff upon request without requiring the production and delivery of checks therefor by him. The defendant gave further proof tending to show that the plaintiff had subsequently countermanded the direction to stop the baggage at Pittsburg, and requested that its transportation be continued to Chicago, and when he learned that it had not been taken off of the train at Pittsburg he expressed his approval of the course pursued by the defendant in forwarding the baggage. The plaintiff's evidence in rebuttal tended to show that he accepted defendant's offer to redeliver the baggage to him at Pittsburg on his arrival there, but contradicted the proof that he countermanded

the request for its delivery there, or ever authorized or approved its continued transportation to Chicago.

Upon this contradictory and conflicting evidence the trial court submitted the question to the jury in language embraced in a request of the defendant, to determine the truth of the matter, and whether there had been such a countermand of the order to stop the baggage at Pittsburg, and approval of its continued transportation to Chicago as constituted a waiver of the original conversion, and charged them if they should credit the testimony of the defendant's witnesses the plaintiff would be estopped from claiming that his baggage was converted at Philadelphia. The charge was quite as favorable to the defendant on the facts as it was entitled to, but the verdict was for the plaintiff.

Several grounds are now urged by the appellant for a reversal of the judgment entered upon such verdict which we will briefly notice. The several exceptions taken to the refusal of the court to charge the various propositions made by the defendant, based upon the assumption that there was not sufficient evidence of a conversion of the plaintiff's property, by the defendant in the transactions occurring between its baggage-master and the plaintiff at Philadelphia, on the 11th of March, to authorize a verdict for the plaintiff, are untenable. The case is much more favorable on this appeal for the plaintiff's claim, in respect to such conversion, than it has ever before appeared, and if it was proper now to re-examine the grounds upon which the claim is founded we should feel constrained to arrive at the same conclusion upon that question which was reached by the court upon the former appeals. A quite sufficient reason for the result reached, now appears in the evidence given for the first time on the last trial as to the practicability of the delivery of the baggage to the plaintiff by the baggage-master at Philadelphia when its return was demanded of him. This evidence tends to deprive the defendant of any excuse for its conduct in refusing to return the baggage, and renders the verdict of the jury, on the question of a conversion, unassailable upon any ground now available to the defendant.

We are also of the opinion that the defendant's several requests to charge that the evidence of the negotiations had between the plaintiff and defendant on the 12th of March, and the subsequent conduct of the plaintiff relating to his baggage was such a renewal of the relations of carrier and passenger between him and the defendant, and such a resumption of the possession and control of his baggage by the plaintiff, as constituted a waiver of any claim for damages on account of the previous conversion, except such as were nominal, were properly refused by the court. The material facts upon which the opinion of the court was based on the former appeal were not confirmed by the evidence given on the last trial, and the only fact bearing upon that question which we are now authorized to consider under the verdict of the jury is the ineffectual efforts of the plaintiff to procure a return of his baggage at Pittsburg and Chicago. The evidence now disproves the idea that the plaintiff had any possession or control of his baggage after he originally parted with it to the defendant, or that his subsequent transportation over the defendant's road had any relation to the previous attempt to secure such transportation.

The case, as now presented, shows an original wrongful detention of the plaintiff's property by the defendant, and a defeat through the negligent or willful misconduct of the defendant and its servants — in carrying it beyond the point agreed upon for its re-delivery, of every effort on the part of the plaintiff to regain its possession. The liability incurred by the defendant through its wrongful refusal to give up the property to the plaintiff at Philadelphia has been in no manner modified or changed by what took place subsequently, except in respect to such part of the property as the plaintiff actually received from the defendant after the loss at Chicago. Assuming its original wrongful conversion, as we must, upon the evidence, a duty rested upon the defendant, if it desired to escape liability therefor, to replace in the actual custody and possession of the plaintiff, the property wrongfully taken from him. This, however, it did not do before its destruction, and after that event, it of course, became impossible. The defend-

1885.] McCormick v. Pennsylvania Cent. R. R. Co. 73

Opinion of the Court, per Ruger, Ch. J.

ant has, therefore, failed to relieve itself of the liability origin-
ally incurred.   The defendant has also again attempted to
raise a question over the plaintiff's right to recover damages
for such part of the property lost, as constituted the ornaments
and wearing apparel of his wife.   This claim is based upon the
ground that under the statutes of Illinois, the place of plain-
tiff's residence, such property belonged to the wife, and an
action for its loss could be maintained, by her alone.   The facts
of the case in respect to this question have not been materially
changed since the trial, which was reviewed in the 49th New
York, and where it was held that such articles constituted a
part of the wife's paraphernalia, and the right of property in
which, under the rule of the common law, was in the husband.
The evidence tended to show that the property in question was
purchased by the plaintiff and given to his wife upon their
marriage in 1858, previous to the passage of any statute in
Illinois changing the rule of the common law as to the owner-
ship of such property.   The evidence to this effect was positive
as to most of the articles in question, and presumptively so
as to all of them, and we see no reason for questioning the
conclusion arrived at by this court on the former appeal, upon
this branch of the case.

The appellant also urged, as a ground for reversing the judg-
ment, that the court should refuse to credit so much of the
evidence of the plaintiff given upon the last trial as contradicts
the evidence given by the defendant's witnesses, to the effect
that the plaintiff had countermanded the directions to have his
baggage stopped at Pittsburg, and expressed his satisfaction
after learning the fact that it had not been stopped, and had
been passed on to Chicago.   The principle of law upon which
this claim is made is stated in defendant's brief in these words:
" It is not competent, as matter of law, for a party to an action
to attempt to contradict for the first time, on the third trial of
a cause, the evidence of an adverse witness on a material point
at issue, given in such party's presence on the two previous
trials."   No authority is cited to sustain this proposition, and
we think none can be found.   It is true that the circumstances

under which such evidence is given would bear strongly upon the credit of the witness testifying, and could well be taken into account by the jury in considering the weight and credibility of the evidence; but it seems to us an extraordinary proposition to claim, as matter of law, that the mere omission of a party to contradict the statement of an adverse witness under such circumstances would authorize the court wholly to disregard his evidence.

It further appears in this case, however, that the plaintiff's omission to contradict this evidence on the previous trials was explained by other evidence in a manner entirely consistent with his truth and integrity.

We see no error occurring on the trial which authorizes a reversal of the judgment appealed from, and it should, therefore, be affirmed.

All concur.

Judgment affirmed.